FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19- |
| v. | : | DATE FILED: |
| JOHN KRAWCZYK | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to pay kickbacks in connection with a federal health care benefit program – 1 count)<br>42 U.S.C. § 1320a-7b(b)(2)(B) (kickback payment in connection with a federal health care benefit program – 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

## INFORMATION

### COUNT ONE

**(Conspiracy to Pay Kickbacks in Connection with a Federal Health Care Benefit Program)**

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information:

### The Medicare Program and Durable Medical Equipment (Generally)

1. The Medicare Program ("Medicare") was a federal health care benefits program providing benefits to persons who were sixty-five years of age or older, or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

2. Medicare was subdivided into multiple Parts. Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies.

1

Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic braces. Parts A and B were known as the "original fee-for-service" Medicare program, in which Medicare paid health care providers fees for services rendered to beneficiaries.

3.  Specifically, Part B of the Medicare program was a medical insurance program that covered, among other things, the ordering of DME, such as Off-The-Shelf ("OTS") knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces"). OTS braces require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual.

4.  DME companies, physicians, and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

5.  Enrolled Medicare providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by all Medicare-related laws and regulations, including the Anti-Kickback Statute, which proscribes the offering, payment, solicitation, or receipt of any remuneration to induce the referral of a patient or the purchase, lease, order, or arrangement therefor, of any good, facility, service, or item for which payment may be made by a federal health care program.

Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

6. Medicare reimbursed DME companies and other healthcare providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

7. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

8. A claim for DME submitted to Medicare qualified for reimbursement only if it were medically necessary to the treatment of the beneficiary's illness or injury and prescribed by the beneficiary's physician.

**The Defendant, Relevant Individuals, and Relevant Entities**

9. Defendant JOHN KRAWCZYK was a resident of Trevose, Pennsylvania within the Eastern District of Pennsylvania. Defendant KRAWCZYK was a co-owner and operator of three DME companies located in Trevose, Pennsylvania—Florida Health Care Services, Inc., Orthotic Care, LLC, and Mark A Miller & Associates, Inc.

10. Individual 1, who is known to the United States Attorney, was a co-owner and operator of Florida Health Care Services, Inc., Orthotic Care, LLC, and Mark A Miller & Associates, Inc.

11. Individual 2, who is known to the United States Attorney, was the founder, part-owner, and manager of Company A, Company B, and Company C, which operated international call centers.

12. Company D was a limited liability company duly organized and existing under the laws of the Commonwealth of Pennsylvania. It was owned or operated by defendant JOHN KRAWCZYK and Individual 1 and utilized to make payments to Company A, Company B, and Company C.

**The Conspiracy**

13. From at least in or about September 2015 until in or about December 2018, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JOHN KRAWCZYK**

conspired and agreed, together with Individual 1, Individual 2, and others known and unknown to the United States Attorney, to knowingly and willfully offer and pay, and cause to be offered and paid, remuneration, that is, kickbacks, directly and indirectly, overtly and covertly, to any person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

**Purpose of the Conspiracy**

14. It was a purpose of the conspiracy for defendant JOHN KRAWCZYK and his co-conspirators to unlawfully enrich themselves by: (a) offering and paying kickbacks in return for completed DME orders; (b) submitting and causing the submission of claims to Medicare for completed DME orders that were obtained through the payments of kickbacks and therefore not

4

eligible for Medicare reimbursement; and (c) diverting proceeds of the scheme for the personal use and benefit of the defendant and his co-conspirators.

**Manner and Means of the Conspiracy**

15. Defendant JOHN KRAWCZYK and Individual 1 falsely certified to Medicare that they, as well as Florida Health Care Services, Inc., Orthotic Care, LLC, and Mark A Miller & Associates, Inc. as providers in the Medicare program, would abide by the Medicare laws, regulations, and program instructions, including the Anti-Kickback Statute.

16. Defendant JOHN KRAWCZYK and Individual 1, through Florida Health Care Services, Inc., Orthotic Care, LLC, and Mark A Miller & Associates, Inc., obtained completed prescriptions for braces for Medicare beneficiaries by paying and causing the payment of kickbacks via international wire transfers to Individual 2.

17. Defendant JOHN KRAWCZYK and Individual 1 utilized sham marketing and business process outsourcing agreements in which KRAWCZYK and Individual 1 purported to be purchasing "raw leads" from Individual 2, when in fact KRAWCZYK and Individual 1 were purchasing completed brace orders from Individual 2.

18. As a result of their payment of kickbacks to Individual 2, defendant JOHN KRAWCZYK and Individual 1, through Florida Health Care Services, Inc., Orthotic Care, LLC, and Mark A Miller & Associates, Inc., submitted or caused the submission of more than

$7,705,168 in DME claims to Medicare, which resulted in a net benefit conferred of approximately $4,003,248.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

1. On or about June 23, 2016, defendant JOHN KRAWCZYK and Individual 1 initiated or sent a wire transfer from Orthotic Care, LLC's bank account ending 6001 to Company B's bank account ending 1016 in the amount of approximately $56,977.50 in kickback payments.

2. On or about June 29, 2016, defendant JOHN KRAWCZYK and Individual 1 initiated or sent a wire transfer from Orthotic Care, LLC's bank account ending 6001 to Company B's bank account ending 1016 in the amount of approximately $56,977.50 in kickback payments.

3. On or about August 8, 2016, defendant JOHN KRAWCZYK and Individual 1 initiated or sent a wire transfer from Orthotic Care, LLC's bank account ending 6001 to Company B's bank account ending 1016 in the amount of approximately $61,537.50 in kickback payments.

4. On or about May 15, 2018, defendant JOHN KRAWCZYK and Individual 1 initiated or sent a wire transfer from Florida Health Care Services, Inc.'s bank account ending 3269 to Company A's bank account ending 0843 in the amount of approximately $10,500.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### (Payment of a Kickback in Connection with a Federal Health Care Benefit Program)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this Information:

1. Paragraphs 1-12 and 15-18 of Count One are incorporated here.

2. On or about May 15, 2018, in the Eastern District of Pennsylvania and elsewhere, defendant

## JOHN KRAWCZYK

knowingly and willfully offered to pay, paid, and caused to be offered and paid, and aided and abetted the payment of, remuneration, that is, kickbacks, directly and indirectly, overtly and covertly, in the approximate amount of $10,500 via international wire transfer from the originating account of FHCS ending 3269 to Company A's bank account ending 0843, belonging to Individual 2, to induce such person to purchase, lease, order, and arrange for and recommend the purchasing, leasing, and ordering of any good, facility, service, and item, for which payment may be made in whole or in part under a Federal health care program, namely, Medicare.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B), and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 1320a-7b(b)(2)(B), set forth in this Information, defendant

**JOHNK KRAWCZYK**

shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense, including, but not limited to, the sum of $915,200.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

*By* _Ronald Sarah_ (signature)
WILLIAM M. MCSWAIN
United States Attorney
Eastern District of Pennsylvania